**E-Filed 3/15/2010**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL MALCOLM, an individual, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br> Defendant. | Case No.  09-4496-JF (PVT) <br><br> ORDER[1] GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS <br><br> [re:  document no.  4] |

Defendants move to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on February 26, 2010.  For the reasons discussed below, the motion will be granted in part and denied in part.

## I. BACKGROUND

This action arises out of transaction for a home equity line of credit ("HELOC") between Plaintiff Michael Malcolm ("Plaintiff") and Defendant JPMorgan Chase Bank, N.A. ("Defendant") in which Defendant allegedly breached the agreement and violated both the Truth

---

[1] This disposition is not designated for publication in the official reports.

1  in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. and California's Unfair Competition Law

2  ("UCL"), Cal. Bus. Prof. Code § 17200 *et seq*.  In March of 2006, Plaintiff and Defendant

3  entered into a HELOC agreement pursuant to which Defendant provided Plaintiff a $122,000 line

4  of credit secured by Plaintiff's property.  Complaint ¶ 17.  Plaintiff's property was valued at

5  $1,000,000 at the time the HELOC was opened.  Complaint ¶ 21.  "In or around August of

6  2009", Defendant mailed Plaintiff a letter entitled "Important Information about your Home

7  Equity Line of Credit" ("Notice Letter").  Complaint ¶ 18 and Complaint Ex. A.  The Notice

8  Letter stated that Defendant has suspended future draws against Plaintiff's HELOC as of August

9  7, 2009.  *Id.*  Plaintiff alleges that Defendant mailed similar Notice Letters to "thousands of its

10  HELOC customers".  Complaint ¶ 3.

11         The Notice Letter stated that the suspension was due to the fact that the property's current

12  valuation of $826,000 no longer supported the HELOC.  Complaint ¶ 18 and Complaint Ex. A.

13  Defendant valued the property using "an industry standard method to value [the] property that

14  did not require an appraiser to enter [the] home."  Complaint Ex. A at 2.  Plaintiff alleges that the

15  method used was an Automated Valuation Model ("AVM").  Complaint ¶ 5.

16         Plaintiff appealed the suspension of his HELOC.  Complaint ¶ 21.  Defendant's appeal

17  process required Plaintiff to order and pay for an appraisal from an appraisal service of

18  Defendant's choosing.  Complaint ¶ 20.  Plaintiff ordered and paid for an appraisal as required.

19  Complaint ¶ 21.  The appraisal indicated that the value of the property was $1,070,000.  *Id.*  On

20  August 27, 2009, Plaintiff forwarded the appraisal to Defendant.  *Id.*  As of the time the

21  complaint was filed, Plaintiff's HELOC had not been reinstated, and Plaintiff had not been

22  reimbursed for the cost of the appraisal.  *Id.*

23         Plaintiff filed this action on September 24, 2009, seeking (1) a judicial declaration that

24  Defendant's "mass reduction of HELOC credit limits in connection with [the Notice Letter]

25  violates TILA", (2) remedies for the violation of TILA, (3) remedies for breach of contract, (4)

26  remedies for breach of implied covenant, (5) restitution, and (6) remedies for violations of the

27  UCL.

28

Case No.  C09-4496-JF (PVT)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
(JFEX1)

1

## II. MOTION TO DISMISS

2

**A.    Legal Standard**

3

  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

4

cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

5

*Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

6

dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in

7

the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "To

8

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

9

to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the

10

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

11

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

12

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Thus, a court need not

13

accept as true conclusory allegations, unreasonable inferences, legal characterizations, or

14

unwarranted deductions of fact contained in the complaint.  *Clegg v. Cult Awareness Network*,

15

18 F.3d 752, 754-755 (9th Cir. 1994).

16

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

17

be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  When

18

amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp*,

19

90 F.3d 386, 393 (9th Cir. 1996).

20

**B.    Plaintiff's TILA claims**

21

**1.    Plaintiff's primary purpose**

22

Defendant contends that the TILA claims are insufficiently pled because Plaintiff alleges

23

no facts showing that his HELOC was primarily for personal, family, or household purposes.

24

TILA's provisions apply to open-ended consumer credit plans, such as HELOCs, only when "the

25

money, property, or services which are the subject of the transaction are primarily for personal,

26

family, or household purposes."  15 U.S.C. § 1602(h).  "The Truth-in-Lending Act specifically

27

exempts from its scope extensions of credit for business or commercial purposes." *Poe v. First*

28

*Nat. Bank of DeKalb County*, 597 F.2d 895, 896 (5th Cir. 1979).

1    Plaintiff alleges specifically that the HELOC was his "primary line of credit which he

2    used for personal household purposes," Complaint ¶ 22, but he does not provide any factual

3    details to support this allegation.  The issue is whether Plaintiff is required to allege such details

4    in his complaint.  Defendant argues that Plaintiff must do so even at the pleading stage, relying

5    upon several district court cases within the Ninth Circuit.  *See Walsh v. JPMorgan Chase Bank,*

6    *N.A.*, No. 09-cv-04387, Slip Op. at 3 (C.D. Cal. Dec. 8, 2009); *Wilder v. JPMorgan Chase Bank,*

7    *N.A.*, No. SACV 09-0834 DOC, Slip Op. at 4 (C.D. Cal. Nov. 25, 2009); *Schulken v. Wash. Mut.*

8    *Bank*, No. C 09-02708 JW, 2009 WL 4173525, at \*4 (N.D. Cal. Nov. 19, 2009); and *Galindo v.*

9    *Financo Fin., Inc.*, No. C-07-03991 WHA, 2008 WL 4452344, at \*4 (N.D. Cal. Oct. 3, 2009).

10   However, each of these cases is easily distinguishable in that none of the plaintiffs made even the

11   bare allegation that the loan primarily was used for personal household purposes.  For purposes

12   of the present motion, Plaintiff has adequately alleged facts that support the application of TILA

13   to the HELOC transaction.

14                    **2.       Allegations that the property value significantly declined**

15   Defendant also asserts that Plaintiff has not alleged facts tending to show that the value of

16   the property did not decline significantly.  Regulation Z, TILA's implementing regulation, allows

17   a creditor to freeze or suspend a credit line only in response to a "triggering event" enumerated

18   therein.  12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(i) at 2.  One such triggering event is a significant

19   decline in property value.  12 C.F.R. § 226.5b(f)(3)(vi)(A).  The Federal Reserve Board's

20   Official Staff Interpretation provides that:

21       What constitutes a significant decline for purposes of § 226.5b(f)(3)(vi)(A) will vary
         according to individual circumstances. In any event, if the value of the dwelling declines
22       such that the initial difference between the credit limit and the available equity (based on
         the property's appraised value for purposes of the plan) is reduced by fifty percent, this
23       constitutes a significant decline in the value of the dwelling for purposes of §
         226.5b(f)(3)(vi)(A).
24
25   12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6.  While this language indicates that a fifty percent

26   reduction in the difference between the credit limit and the available equity always will be

27   considered a "significant decline", it also suggests that less dramatic declines also may be

28   "significant" based on the individual circumstances.

4

1  Defendant argues that its valuation method and Notice Letter indicate that the value of the
2  property did decline "significantly". The property's original value was $1,000,000. Complaint ¶
3  21. The Notice Letter indicated that the property value had declined to $826,000. Complaint ¶
4  18 and Complaint Ex. A. A decline of $174,000 could be considered significant. However,
5  Plaintiff alleges with particularity that there was no decline at all. The Notice Letter was mailed
6  sometime in August 2009. Complaint ¶ 18. An appraisal of Plaintiff's property performed that
7  same month indicated that the property was worth $1,070,000. Complaint ¶ 21. If accepted by a
8  trier of fact, the appraisal would be evidence that the property value had not declined
9  significantly.

10  Although Defendant acknowledges that TILA requires reinstatement of a HELOC if a
11  subsequent valuation shows that the value of a property has recovered, it contends that a
12  subsequent valuation cannot be used to show that the Defendant's original valuation was
13  incorrect. Here, however, Plaintiff offered his appraisal within a month after his HELOC was
14  suspended. The proximity of the appraisal to the date of the Notice Letter permits a reasonable
15  inference that the valuation in the Notice Letter was incorrect in the first instance.

16  **3.** **Allegations that Defendant's reliance on the AVM was improper**

17  Defendant next argues that nothing in TILA or Regulation Z prohibits a creditor from
18  using an AVM to value property for the purposes of 12 C.F.R. § 226.5b(f)(3)(vi)(A), and
19  Regulation Z allows a creditor to suspend credit privileges without first obtaining an appraisal.
20  12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6. However, Plaintiff does not allege that mere use
21  of the AVM violated TILA. Rather, he alleges that Defendant "knowingly lacked a sufficient
22  factual basis for reducing or freezing" the HELOC accounts. Complaint ¶ 41. In other words,
23  Plaintiff alleges that Defendant suspended his credit based on its AVM methodology *knowing*
24  that the methodology was unreliable.

25  Plaintiff provides a list of reasons as to why Defendant's AVM methodology is flawed,
26  including failures to validate the AVM periodically to mitigate potential uncertainty; document
27  the method's analyses, assumptions, and conclusions; back-date representative samples of the
28  valuations against market data on actual sales; and account fairly for improvements, property

5

type or geographic comparables.  Complaint ¶ 34.  However, Plaintiff does not identify any

provision in TILA or Regulation Z that requires these specific features in an AVM.

The Federal Deposit Insurance Corporation's Financial Institution Letter dated May 24,

2005 (FIL-45-2005), upon which Plaintiff relies, is not an interpretation of the requirements of

TILA or Regulation Z.  *Yakas v. Chase Manhattan Bank, U.S.A.*, Case No. C-09-02964-WHA

(N.D. Cal. Jan. 25, 2010), also cited by Plaintiff, is inapposite because it involved an AVM in the

context of a breach of contract claim rather than a claim under TILA.

The complaint does not allege that Defendant *knew* that the AVM was inaccurate with

respect to the subject property specifically.  Rather, it alleges only that the Defendant "knowingly

lacked sufficient factual basis" to suspend the HELOC.  While Plaintiff has alleged sufficient

facts to support his assertion that the property's value did not decline significantly, he

nonetheless has not pled sufficient facts to state a claim that Defendant *violated TILA* in relying

on the AVM.

### 4.    TILA triggering events

Plaintiff also alleges that the HELOC agreement violated TILA because it allows

Defendant to suspend the HELOC for declines in property value that amount to a less than a fifty

percent reduction in the difference between the credit limit and the homeowner's available

equity.  As discussed above, the comments to Regulation Z suggests that a fifty percent reduction

in equity is a significant decline "[i]n any event."  12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6.

That interpretation does not rule out other, lesser "significant declines."  Depending upon the

circumstances, a lender could suspend a HELOC for a decline that results in a less than fifty

percent reduction in equity.  Accordingly, Plaintiff has not stated a claim that Defendant's loan

documents on their face contemplate improper triggering events, nor can this particular defect be

cured by amendment.

### 5.    Defendant's reinstatement and appeals process

Plaintiff next alleges that Defendant's reinstatement and appeals process violates TILA

because Defendant required Plaintiff to pay for the appraisal in advance, as opposed to

performing its own investigation and then charging only the bona fide fees it incurred.  The

6

1    comments to Regulation Z provide that "[i]f not prohibited by state law, a creditor may collect

2    only bona fide and reasonable appraisal and credit report fees if such fees are actually incurred in

3    investigating whether the condition permitting the freeze continues to exist."  12 C.F.R. Part 226,

4    Supp.  I, ¶ 5b(f)(3)(vi) at 3.  Plaintiff does not allege that the appraisal fee was not bona fide or

5    that the fee was not incurred in investigating whether the condition permitting the freeze on

6    Plaintiff's HELOC continued to exist.  The statute does not require that the creditor complete the

7    investigation before collecting fees.  This pleading defect cannot be cured by amendment.

8            **6.    Defendant's Notice Letter**

9            Plaintiff alleges that the Notice Letter violated TILA because it was untimely, failed to

10   contain specific reasons for the suspension of the HELOC, and failed to provide Plaintiff with

11   enough information to determine whether he should expend the resources to appeal.  Regulation

12   Z requires that "[t]he notice must be provided not later than three business days after the action is

13   taken and shall contain specific reasons for the action. If the creditor requires the consumer to

14   request reinstatement of credit privileges, the notice also shall state that fact."  12 CFR

15   226.9(c)(1)(iii).

16          Plaintiff makes only a conclusory allegation that the Notice Letter was untimely.  The

17   letter, which is attached to the complaint as Exhibit A, is undated.  Plaintiff's only allegation

18   regarding his receipt of the letter is that Defendant mailed the letter "[i]n or around August of

19   2009".  Complaint ¶ 18.  The Notice Letter states that the HELOC was suspended as of August 7,

20   2009.  This allegation alone is insufficient to support the conclusion that the Notice Letter was

21   not sent within the stated period.  A court need not accept as true unwarranted deductions of fact

22   contained in the complaint.  *Clegg*, 18 F.3d at 754-755.  It is undisputed that Plaintiff received

23   the Notice Letter.  If he did not receive the Notice Letter within three days after his HELOC was

24   suspended, he must allege that fact in the complaint.

25          The complaint also alleges that the Notice Letter did not contain specific reasons for the

26   suspension of Plaintiff's HELOC.  The Notice Letter states that "we've used a proven valuation

27   method to estimate your home's value at $826,000.  Unfortunately, that valuation on longer

28   supports the full amount of your Line of Credit".  Complaint Ex. A at 1.  The Notice Letter also

                                                    7

1    states that: "Your property value no longer supports your full Home Equity Line of Credit". *Id.*

2    at 2.  The Notice Letter does provide the reason for the suspension of Plaintiff's HELOC.

3    Neither TILA nor Regulation Z requires Defendant to use the term "significant decline" when

4    describing a loss of property value.

5         Finally, Plaintiff alleges that the Notice Letter failed to provide him with enough

6    information to determine whether he should expend the resources to appeal, including how the

7    Defendant computed the value of the property or the threshold value a customer needs to

8    demonstrate in order to obtain reinstatement of a HELOC.  However, Plaintiff points to no

9    provisions in TILA or Regulation Z that require such disclosures.

10        Plaintiff directs the Court's attention to *In the Matter of Century Bank*, Notice of Charges

11   and Hearing for Cease and Desist Order, Office of Thrift Supervision Docket No.  08071 [AP-

12   09-02], Mar.  3, 2008, *available at* http://www.ots.treas.gov/

13   ?p=Enforcement&ContentRecord_id=f151caa0-1e0b-8562-eb8e-55f0274d9741.  In that case, the

14   creditor sent notices stating that the borrowers' HELOCs were suspended because "one or more"

15   of the conditions enumerated by Regulation Z had occurred.  The borrowers were not able to

16   determine the specific reason for the lender's action.  Here, the specific reason for the suspension

17   was given.

18   **C.    Breach of Contract**

19        Defendant argues that Plaintiff's breach of contract claim is insufficiently pled because

20   Plaintiff has not alleged facts suggesting that the value of the property did not experience a

21   significant decline in value.  As discussed above, the HELOC agreement allows Defendant to

22   suspend the HELOC if the property's value has declined "significantly below the property's

23   appraised value for purposes of this Credit Line Account."  Complaint ¶ 52.  Plaintiff's appraisal,

24   performed within a month of the suspension of the HELOC, indicated that the property had

25   increased in value by seven percent.  Accordingly, Plaintiff has stated a claim for breach of

26   contract.

27   **D.    Breach of Implied Covenant**

28        "There is implied in every contract a covenant by each party not to do anything which

8

will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal.App.2d 405, 417 (Cal. Ct. App. 1960). A "breach of a specific provision of the contract is not a necessary prerequisite" to establishing a breach of the implied covenant of good faith and fair dealing. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 373(1992). However, "[t]he implied covenant will not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms." *Berger v. Home Depot U.S.A.*, *Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007).

Plaintiff alleges that Defendant violated the implied covenant in three ways: by suspending the HELOC "without first having a sound factual basis for claiming there was a decline in value"; by failing to provide sufficiently specific notice and material information regarding the calculations used to justify the suspension; and by forcing Plaintiff to pay for an appraisal in advance.

The allegation that Defendant suspended Plaintiff's HELOC without a sound factual basis is essentially the same as that supporting Plaintiff's breach of contract claim. "If the allegations in a breach of implied covenant claim 'do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" *Schulken v. Wash. Mut. Bank*, No. C. 09-02708 JW, 2009 WL 4173525 (N.D.Cal. Nov.19, 2009) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990)).

However, Plaintiff also claims that Defendant breached the implied covenant by failing to provide sufficiently specific notice and material information regarding the calculations used to justify the HELOC suspension and by requiring him to pay for an appraisal in advance. The HELOC agreement required Defendant to maintain a $122,000 line of credit for Plaintiff unless, among other things, the value of the property declined significantly. Allegations that Defendant claimed that the property value had declined without a sufficient factual basis, failed to provide specific information as to how it reached that conclusion, and then required the borrower to pay the cost of an appraisal to show otherwise are sufficient to state a claim for breach of the implied

9

1  covenant of good faith and fair dealing.

2  **E.    Unjust Enrichment/Restitution**

3       Plaintiff's sixth claim for relief is entitled "Unjust Enrichment/Restitution".  Defendant

4  contends that this claim must be dismissed because California does not recognize a separate

5  claim for unjust enrichment; Plaintiff failed to allege any benefit that he conferred on Defendant;

6  and an express contract governs the parties' relations, providing Plaintiff with an adequate

7  remedy at law.  These arguments are unpersuasive.

8       California does recognize a claim for restitution.  *Nordberg v. Trilegiant Corp.*, 445 F.

9  Supp. 2d 1082, 1100 (N.D. Cal. 2006).  An unjust enrichment claim requires the allegation of the

10 "receipt of benefit and [the] unjust retention of the benefit at the expense of others."  *Lectrodryer*

11 *v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000).  Plaintiff alleges that he conferred

12 the benefit of providing Defendant with a current appraisal on the home in which it had a security

13 interest, the benefit of "keep[ing] less cash on hand in order to cover the obligations with respect

14 to the HELOC accounts", and the benefit of the time value of the money it otherwise may have

15 been required to lend into the HELOCs.  Complaint ¶¶ 69-70.  Plaintiff does not allege that

16 Defendant retained the latter two benefits at his expense.  However, at least as to the appraisal,

17 Defendant did receive and retain that benefit at Plaintiff's expense.  The existence of an express

18 contract is not dispositive as Plaintiff clearly has pled in the alternative.

19 **F.    UCL violations**

20      California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200 ("UCL"),

21 prohibits any "unlawful, unfair or fraudulent business practices."  *See also Cel-Tech Commc'ns,*

22 *Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Because the statute is written

23 in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or

24 (3) fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  Plaintiff

25 contents that Defendant's conduct has violated all three prongs.

26      **1.    Unlawful conduct**

27      "By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other

28 laws and treats them as unlawful practices that the unfair competition law makes independently

actionable." *Cel-Tech*, 20 Cal.4th at 180.  Plaintiff alleges that Defendant's conduct was unlawful because it violated TILA and Regulation Z.  Complaint ¶ 78.  As discussed above, Plaintiff has failed to state a claim under TILA.

### 2.    Unfair conduct

Plaintiff's "unfair" UCL claims are preempted by TILA.  While conduct that complies with TILA may be otherwise actionable under private contracts or principles of restitution that are based in quasi-contract, conduct that meets the requirements of TILA cannot be considered "unfair" under the UCL.  *See Rubio v. Capital One Bank*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (holding that disclosures that comply with TILA may not serve as the basis for UCL claims).

### 3.    Fraudulent conduct

Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive". *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App. 2009). Though "fraudulent" has a different meaning under the UCL than in the case of common law fraud, a complaint alleging "fraudulent conduct" still must meet the particularity requirements of Fed. R. Civ. P. 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Federal Rule of Civil Procedure 9(b) requires [ ] specificity including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations. [ ] To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citations and quotation marks omitted).

Plaintiff alleges that the following conduct was "fraudulent": Defendant's statements to HELOC borrowers regarding the availability of credit through HELOCs, Defendant's statements in the Notice Letter, and Defendant's statements that any potential future reduction of credit through the HELOC would occur only  through a substantial decline in value.  Complaint ¶ 77.

The allegation with respect to Defendant's statements regarding the availability of credit

11

lacks particularity.   Plaintiff alleges neither the contents of the statements nor when the statements were made.  Plaintiff's allegation with respect to Defendant's statements regarding potential future reductions in credit also lacks particularity.  Plaintiff does not identify when or where these statements were made.  In his opposition papers, Plaintiff identifies other portions of his complaint that reference Defendant's ability to limit the credit line based on significant declines in property value.  Complaint ¶ 52.  However, the agreement provides that a significant decline in property value is only one reason for which Defendant may reduce the amount of credit available.

Finally, Plaintiff does not explain with specificity what statements in the Notice Letter "misrepresent the borrowers' and Chase's legal obligations."  Complaint ¶ 77.  To the extent that Plaintiff is claiming that the Notice Letter was "fraudulent" under the UCL because it should have contained more information, that claim is preempted by TILA.  Although Plaintiff alleges conclusorily that the Notice Letter is misleading, he has pleads no specific facts to support that allegation.

### III. ORDER

(1)    The motion to dismiss is GRANTED in part and DENIED in part as set forth above, WITH LEAVE TO AMEND;

(2)    Any amended pleading shall be filed and served within thirty (30) days after issuance of this order.

DATED: 3/12/2010

_____
JEREMY FOGEL
United States District Judge

12